Thank you, Your Honor. May it please the Court. My name is Jacob Phillips. I represent the plaintiffs and appellants in this case, and it's a privilege to present oral argument to you guys. Hopefully I can clarify any specific questions you have. Happily, this is a relatively straightforward case where plaintiffs allege that sales tax and mandatory title transfer fees are part of the actual cash value of their vehicle, which suffered a total loss. Plaintiffs' interpretation of the insuring collision and comprehensive coverages provided by the policy is reasonable. Plaintiffs offer a reasonable way to measure fair market value in the context of an actual cash value policy. And as such, plaintiffs' interpretation must be adopted under Texas standards for interpretation of insurance policies. We start, of course, as we must, with the plain language of the policy. The policy promises to pay for loss. Loss is defined as essentially damage to a vehicle. That loss then is measured as the cost to repair the damage, cost to repair or replace the damage to the vehicle. So you get the fender bender, and a repair facility has to fix some dents and scratches. They might have to replace some taillights or a bumper. The cost to do so is what's promised by the policy. However, that cost reaches a certain threshold at some point where it's no longer economically feasible to pay the cost to repair or replace the damage. The policy in this case explains that when that cost exceeds the actual cash value of the policy, it's now what's considered a total loss. This is a pretty standard auto policy throughout all jurisdictions of the state of Texas. At that point, then, the insurer is not obligated to pay the cost to repair or replace the damage. Rather, they pay the actual cash value of the vehicle. Of course, this makes sense. Why pay a higher cost to just get the same vehicle for a lesser amount and maybe recover your salvage or whatever the case may be if you're the insurer. Very sensible. So then the question then becomes, how do we measure that? What's the measure of actual cash value? Texas law is that actual cash value equates to fair market value. What does that mean? Well, fair market value is what a willing buyer and a willing seller under no compulsion would agree to. Well, what does that mean? We have to be able to measure that. So then Texas provides ways of measuring. Which wouldn't involve taxes. If I sell my car to someone, they don't give me the tax money. I'm sorry, Your Honor. What's being sent between the buyer and seller doesn't involve taxes. It does involve, well, it's part of it. No, if I sold my car to Judge Ho, he would give me money and then he'd have to deal with the registration and the taxes. They'd go to the state. I wouldn't get to keep the taxes. Well, you wouldn't, but you're not selling this vehicle. You're having to replace the vehicle. You lost it. So the fair market value can be measured as either replacement cost, less depreciation, as income capitalization. You said market value, and I agree with you, is defined by Texas laws, what the willing buyer is going to pay a willing seller. As a general definition, but then we have to have a way of measuring that, right? Right. So, well, if I went and told someone who didn't know anything about a 2016 Toyota Camry, what's the willing buyer and willing seller? Well, I've got to present you evidence, right? I've got to show you. I've got to give you a way of measuring that. And so, Texas law provides ways of measuring that. Income capitalization, which is irrelevant, right, because we're talking about private passenger vehicles. There's no income being generated. The other two methods that could be used are fair market, excuse me, are replacement cost, less depreciation, or comparable sales. Fair market value in the context of an ACB policy, under Goldman, under Toller, under Green's point, they say, well, the way that you measure it is replacement cost, less depreciation. Other cases say it's at least a consideration for a jury to consider. Replacement cost, original cost, all these various factors. The Lowry opinion says that in a well-functioning market, there's no difference. Replacement cost, less depreciation, fair market value, it must be a reasonable way of measuring fair market value if there's little to no difference between them in a well-functioning market. Of course, used automobiles is a well-functioning market. Let me ask you, looking at the policy, the limits of liability, it says limits of liability for a covered auto is the lowest of, one, actual cash value, two, the amount necessary to replace the stolen or damaged property reduced by salvage value. So why doesn't that indicate that actual cash value does not include replacing the vehicle? Yeah, that's a great question, Your Honor. I have two answers to that. First, then if you continue to look lower down in the policy, it talks about when it's determining the cost to replace, it's of like kind and quality. They don't have to use original manufactured parts. They can use non-original manufacturing parts. So say they owe the actual cash. Say I buy a 2016 Toyota Camry, I get an accident. The actual cash value of the component parts of the vehicle, a door, they've got to replace the door. The actual cash value of that door, that original manufactured door, is going to be X amount. The replacement cost, the policy allows them, they don't have to use original manufactured parts. That's going to be a lower, they're allowed to use a three-year-old door, but it doesn't have to be original manufactured, so the replacement cost is going to be less than actual cash value in that instance. And then the second answer I would give is that this formulation, actual cash value, cost to replace, cost to repair, stated value, that's every auto policy, right? And so Couch's, Appelman's, the Schaefer case, the Siegel case, Florida Supreme Court case, they explain that repair or replace with like kind and quality, that's for partial losses. That's inapplicable in the context of total loss because it doesn't really have anything to do with monetary value. You're trying to replace the functionality. That's why they can use non-original manufactured parts because it's just, we need to get this car back to how it functions. That's the replace. The actual cash value is talking about market value. It's talking about a monetary value as opposed to repair or replace. And all auto policies are structured that way. The repair or replace applies to partial losses under Schaefer, Siegel, Couch's, Appelman's, whereas actual cash value refers to a total loss. So the question is, does this policy change Texas law? Does this policy say something, does this policy give a way of measuring fair market value that is different than Texas law? It doesn't. It just says market value, right? It says it's going to be determined by market value. So it's confirming that Texas law applies. Well, what's Texas law? Texas law is that a reasonable way of measuring market value is replacement costs less depreciation. That's what Goldman says. That's what Toler says. Chris, the Texas Supreme Court case, says you at least have to consider it. Greenspoint says the same thing. There's a triple S properties said if the policy doesn't give the way of measuring fair market value, how could we say that replacement costs less depreciation is a way under Texas law you can measure fair market value, except that it's an unreasonable way of measuring fair market value. There would be an inconsistency there, especially in light of Lowry saying that in a well-functioning market these are the same things. That circle can't really be squared, right? It can't be both that replacement costs less depreciation and market value, there's little to no difference between them, except there is a difference because you're not allowed to consider replacement costs less depreciation in a well-functioning market. Those two things are inconsistent. The kicker, though, is that technically this court need not reach that issue. The minimalist way of warranting reversal is not to say, well, this is how the policy must be interpreted. If it means market value, market value is an issue of fact. If it's an issue of fact, it cannot be determined on a 12b6 motion. Every single one of these cases, the Crisp Supreme Court case, we cited the case Adams v. State Farm where the appellate court was affirming a jury verdict, where the jury determined that the pre-accident market value of a total loss vehicle included sales tax and fees. All of these cases were not decided on the motion to dismiss because they're an issue of fact. And Crisp says what a jury should consider is all of these different factors, including replacement costs. There's simply no way, if market value is the measure of damages, there's no way that can be determined on a 12b6 motion to dismiss. So even if this court isn't inclined to give its interpretation, this is how we say it should be interpreted, at a very minimum, if this is market value, which the lower court found, even if we isolate it from ACV, even if we write ACV out of the policy and the only thing we have to consider is just from a blank slate market value, that's an issue of fact. And we'll go in front of a jury and we'll try to prove our case. There's all these websites now where if you're buying a car, you can go look and it'll say what the average price for that car is in Houston or whatever location. Sure. And to me, that's the market price. It's trying to say we think this is the market price for the vehicle. That doesn't include taxes. The list price? Yeah. So even under comparable sales tax. No, I'm not talking about the list price. I'm talking about just in general usage, the market price. If I told someone I sold my car for $10,000, I don't say, that doesn't include the $700 of taxes that the person had to pay. So you go and you're trying to purchase a car from a dealer or whoever and they say, all right, you can walk out of here. You can walk out of here, $11,000. And then you say, so that includes taxes and fees and everything. Don't worry about it. Maybe it does, maybe it doesn't. But $11,000, do we have a deal? No, you're going to want to know. It's going to be a factor that you consider. Am I actually walking out of here for $11,000 or am I paying these taxes and fees? By the way, how does that cut? It seems to me that that argument cuts against you. No, no, no. I'm saying so it's a factor that I would consider. If someone says $11,000, let's shake hands, we have a deal. And you wisely, as a good consumer, ask specifically, when you say that's the price, I want taxes included. No, I say, so I ask him, you're saying I can walk out of here for $11,000. Does that include everything? Well, you're asking because you're not sure it does. I don't know that it does, so I'm asking you. And the guy says, don't worry about it. Maybe it does and maybe it doesn't. You'll find out later. But do we have a deal? Can we shake hands? Of course, it's a factor I would consider in deciding whether I'm going to make that deal. I wouldn't just be like, sure, I'll find out. Does it or does it not? We'll find out. No. I need to know what that price is. It's a factor that goes into my consideration. And again, maybe you disagree. What is your best case that says market value, this price a willing buyer is going to pay a willing seller, typically includes the tax, not just the money that's exchanged between the buyer? Because again, the tax goes to the government. It doesn't go to the seller. Right. But it's a cost that I pay. And I'm trying to replace the vehicle. And in order to replace the vehicle, I have to pay that cost. But I didn't think it was defined as what a buyer pays. I thought it was the, it defines it as between a buyer and seller. It's also just, it's also not just the seller. It's the buyer and the seller. So back to my question. What case says that that market value as defined by Texas law includes the tax that goes to the government? So Goldman says it's replaced with cost less depreciation, including sales tax. Mills, an 11th Circuit case, which is, Florida has the same law, includes sales tax. Lowry says that they're the same. Crisp says that it has to be considered. Adams v. State Farm, the Texas Appellate Court affirmed the jury verdict that it includes sales tax. Those are all replacement cost cases? No, they're all actual cash value, fair market value, which is under Texas law means fair market value, all of them. Greenspoint, same thing. Toler, SSS Properties. I mean, it's the Texas Department of Insurance. So I mean, it's the standard way of measuring. There's an 8th Circuit case, it's called Henry's State Farm, where they say that market value in an actual cash value policy, the standard way in the industry of measuring it is replacement cost less depreciation. That is a reasonable way of measuring it. I'm confused. What I just asked you is, are those actual cash value cases or are they replacement cost cases? Actual cash value. Replacement cost less depreciation is the way of measuring market value in an actual cash value policy. So actual cash value is synonymous with fair market value. Fair market value can then be measured in one of three different ways, one of which is replacement cost less depreciation. Replacement cost less depreciation is the standard reasonable way across the industry in Texas and everywhere that these things are measured. In the auto context, every auto insurer, you know, measures it this way. Okay. But what do you make of the fact, and I think Judge Costa alluded to this earlier, this contract provides explicitly for both actual and replacement. Well, that's replacement cost without depreciation. So I would just rest on the answer that I gave before, which is that replacement cost in that context is referring to a partial loss. It's referring to like, kind, and quality, and it's allowed to use non-original manufactured parts as the limitation of liability goes on. That's referring to a partial loss. The actual cash value, the fair market value of an original manufactured component part is going to be higher than the cost to replace the same door, but non-original manufactured part, which is why couches and chairs are... Where's the depreciation language you're referring to? No, actual cash value is then equated with fair market value. And so the depreciation language... All I know is I'm looking at the policy, and option one, A1, limits liability, A1 is actual cash value minus, of course, the deductible and any salvage. Right. Then A2 is replacement, reduced by, once again, deductible and salvage. Right. And so then if you continue looking further down in the policy, they explain what the cost to replace means, right? Cost to replace means to replace with like, kind, and quality... Do you know the section you're looking at? In the same section that Judge Ho is in right now, the limitation of liability and the property  Page 23 of the policy. Page 23 of the policy. So then under subsection B, it says, if a repair or replacement results in better than like, kind, or quality, we will not pay for the amount of betterment. Then it continues on... What section of B are you in? I'm sorry, B4. So it says, if repair or replacement results in better than like, kind, or quality, we will not pay for the amount of betterment. Then later it says, in determining the amount necessary to repay a damaged property, this is subsection 5, the amount paid for us shall not exceed the prevailing competitive labor rates, will be based on the cost of repair or replacement parts and equipment, which may be new or reconditioned, remanufactured, or used, including, but not limited to, non-original manufactured parts or equipment. That's why, so we cited this in our brief, but that's why Schaefer, Siegel, Couches, Appelmans, they all explain this provision, actual cash value, or replace, or repair. The replace, or repair, is referring to the component parts, it's referring to a partial loss. It's always going to be greater than actual cash value if it's a total loss, and it's always going to be lesser than actual cash value if it's a partial loss. So the repair or replace is going to be lesser if it's a partial loss, that's where it's applicable. If it's a total loss, it's actual cash value. And the parties don't dispute, that what's owed here is the actual cash value, actual cash value as determined by market value. How do we measure market value? Texas law is clear that replacement costs less depreciation is a reasonable way of measuring market value, and at a minimum is something that a jury should consider in determining the factual question of the amount of market value. And your point is replacement costs is where the taxes and title fees come in. Appreciated replacement costs of sales tax, yes, is where that would come in, as a reasonable way under Texas law to measure fair market value under Lowry, under Bradley, under Goldman, under Crisp, under Toler, under Greenspoint, and Adams, and numerous other cases. And unless there are further questions, I'll reserve the rest of my time. All right, we have time for rebuttal. Mr. Higgins? May it please the Court, Counsel. Roger Higgins on behalf of Elephant Insurance Company Appellee in this case. If plaintiffs are successful in this case, they will essentially convert an actual cash value policy for total losses that measures its damages in terms of market value into a replacement cost policy. And we know that that is not proper under Texas law, policy language, recent precedent in the form of Schaefer, and long-standing precedent in Texas. Plaintiffs start to get there by, in their briefing, with a kind of an approach towards interpretation of insurance in Texas that blends ambiguity and blends liberal construction. But the rules in Texas are very clear. The Court is to apply the plain and ordinary meaning of the policy. And in Schaefer, they're addressing very similar language to this. The Court found that this type of language is not ambiguous. And in fact, if the Court starts conflating actual cash value with replacement cost, which plaintiffs are really trying to do here, then you're reading out the lesser of provision in the policy and the limits of liability provision, which is part of the covering provision in this type of policy. It circumscribes the insurer's obligations. If replacement cost is conflated with actual cash value and market value in this case, then the Court is improperly applying Texas law, improperly following the lesser of language that appears in the limits of liability provision. Plaintiffs, at times, flirt with an ambiguity argument, but I really haven't heard a clear articulation of what the ambiguity is. But it's clear they really can't make one. Because in the case, such as Toller, they rely on, Toller says actual cash value is not an ambiguous term. The Toller case looked at Texas law and said, when we look at a term like actual cash value, we'll look at the common law, we'll look at that to make sure we understand and give it a meaning. And the Court said that is not ambiguous. They referred to this Court's opinion in the McMurray case that we cite in our supplemental submission in response to their supplemental submission, that you look to the law of the state to determine what these terms mean. And actual cash value, the plaintiffs then go into, to try to further this confusion about what actual cash value means. Plaintiffs start citing, and they didn't do it in their argument today, but this concept of pure indemnity and ACV has some kind of broad concept, and that's really a misconstruction. Because in Schaefer, the Court made it very clear, in Carlton, that Schaefer relied upon. Texas Supreme Court made it very clear that in addressing actual cash value, the policy terms, you look at the policy terms of the contract. That circumscribes the obligation. We're not looking at some kind of general loss or tort damage here. We're actually looking at the payment provisions. And plaintiffs push that, in part trying to create some sort of ambiguity, I think, but they're never really clear on where they get that from. The other thing that the plaintiffs try to do in pushing their point, other than this pure indemnity concept, is that they start misapplying the ACV concept. And I want to break that down a little bit, what I mean by that. There's a long history in Texas law, going up through the Schaefer opinion and later, as to how we approach actual cash value and how the courts sort of approach actual cash value. And you go back to the Crisp decision, the Texas Supreme Court decision from 1963 that they cite, and Crisp makes it very clear, actual cash value is not replacement cost. And if you have a methodology of determining actual cash value that is based on replacement cost, you are giving the insured something they are not entitled to under the contract. And in that case, the Texas Supreme Court was dealing with home goods that don't have a value. But they said, generally, ACV is a market value. That's our test for ACV. Fast forward a little bit, we have the Dawson case out of Tyler. It says very clearly in the auto total loss context, it's market value as a way of approaching actual cash value, not replacement cost minus depreciation. Let me get to that. In the Tolar, I'll use the Tolar case, that's a case I handled and I understand the facts of it, but I can address it from the opinion. The appellants are conflating real estate cases with auto cases. As this court in Lowry said, the market value is a preferred approach to actual cash value. But recognizing that when you're dealing with a partial damaged house, you don't go out and find, like you call the sites, what the values are. You have to use some other methodology to come up with actual cash value. Because under those policies, those are actually replacement cost policies that only pay actual cash value until repairs are done. So what the courts have accepted in the homeowner's context, like Tolar, Greenspoint, Goldman, is that you're going to take an estimate for the replacement costs and depreciate all of it down. And plaintiffs have asserted in their petition, we really have to look at what they're seeking in this case. They're saying that they want 6.25% or more, depending on what the sales tax is, over and above the cash value that Elephant paid on these claims. They're not saying they want a part of that or some revised actual cash value calculation. It is very clear in this case filed under the Class Action Fairness Act that the court below was dealing with a very clear request for a full payment of sales tax and transfer fees. They then go in, so they go in and they find Tolar and they find the case law that talks about homeowner's type cases. And in those cases, the court said that you do include sales tax in the replacement cost, then you depreciate it when you have a home, because there is no market value out there, trying to get to that actual cash value. That is totally inconsistent with what they're asking here, because in Tolar, what the court actually said was, you didn't know the full sales tax or the full replacement costs until the other conditions were met as part of the ACV payment. So their argument is actually inconsistent with the Tolar opinion, because Tolar was saying, you only owe actual cash value until it's replaced under that homeowner's policy. It's a totally different type of coverage. And we can't use market value, because there's no market value out there readily available for a house with a damaged roof. That's too cumbersome. We're not going to do that. We have a different methodology the courts in Texas have recognized for homeowner's cases. I've never seen one auto case in the state of Texas that said depreciation minus replacement costs minus depreciation is the methodology. Oftentimes in their pleading, claims will just kind of slip into saying, well, we're entitled to replacement costs plus this tax. They are conflating the term. They should not be permitted to use the homeowner's standard when the Texas courts have so strongly said market value is the approach when you're dealing with a piece of personal property like that. In fact, the court that they rely on, Lauer one of the opinions they rely on, Lauer, specifically said that's the preferred method when there's a market available for that. And then the court's discussion about well-functioning markets, that really had to do with real estate cases, real estate property. And so they misapply those cases that are applicable in the real estate context to the auto. But just as importantly, those cases don't allow full recovery of the taxes or fees when they go that process either. So in the court below, the court was addressing the pleadings that they had, which was a request for full sales tax, full transfer fees on top of the costs. Clearly, the Texas Supreme Court in Schaefer has made it very clear, we're not going to be looking at general concepts of damage when we're addressing these auto policies. We're going to look at the three steps. To pay the lesser of, actual cash value, cost to repair or replace, or the limits of policy. And that's the obligation the insurer has. At times plaintiffs argue that that's an exclusion. It's not. Schaefer says it's not. And it somehow should be strictly construed. Courts don't say that in Texas. You apply the claim in ordinary meaning. In fact, in inflating these terms together, you're ignoring the lesser of language. And they specifically rejected that. In Carlton, the court specifically said, we're not going to allow you to start looking at tort standards. And we understand that some courts in other states do that. We're not going to do that in Texas. That's what the Carlton opinion says. What do you say about the cases from other jurisdictions they cite that have, in looking at ACV, have included taxes? Now some of those, I think like the 11th Circuit case, the ACV was defined to include a replacement standard. But do you want to address those cases from outside Texas? I can do it very briefly, Your Honor. I think that, first of all, Texas is so clear. I always find that Texas has such a strong body of law on these issues that all we have to do is look at Dawson and the cases that say that you apply the market value in this context. And then understanding what Tolar is really saying in the context of what it's ordering. But in those cases, like in Florida, there's statutes that address this. We don't have a statute in this case, as the court recognized in an underlying case. So there's statutes. There's a broader approach to the broad evidence rule in some of those states, which Texas is not applying at all across the board in these kind of circumstances. So there's a lot of different circumstances. And the Bastian case in Florida really focused on some of the statutory issues. We're not dealing with that. In fact, in Texas, we pointed this out in the motion dismissed below, but sales tax is always above, on top of the purchase price. And in the motor vehicle code, the value of the vehicle, the actual cash value of the vehicle is market value. What about the Department of Insurance language they cite? That language specifically says you have to look at your policy. That's what's going to govern. And that's an interesting point, because the rules in Texas are you don't look at extrinsic evidence when you're determining if a policy is ambiguous or what the policy's meaning is. In Tolar, Schaefer, and other cases like that, they all had an opportunity to address different opinions of the Department of Insurance or comments made. And they said, we don't have to do that. We're looking at the policy language. That's the proper approach here. So not only is it not proper to look at extrinsic evidence at this point, but the actual document they're referring to says, but look at your policy language, because that's what ultimately controls. And that's what Schaefer recognized, that's what Tolar recognized, and other cases. Is your policy language fairly typical of the industry? Yes. Now, some policies don't have the market value reference when it says actual cash value will be determined by market value. Actually, I think that's icing on the cake, because I think the law of actual cash value in Texas is, in this personal property context, it's market value. But it goes ahead and says that. My question basically is, is this a problem that this tax question is a problem that really just affects Elephant or does it affect a lot of other insurers in Texas? There's a lot of these lawsuits out there. Should we certify this to the Texas Supreme Court? I don't think it's necessary, because I think Schaefer's, really, this is so close to Schaefer. I think that it's addressed by Schaefer. I think they're so off on how they applied Tolar to get to this point of replacement cost minus depreciation. I think the law is clear. I think the judge was correct in saying... But you acknowledge it is technically an open issue. Only... I understand that you would extend certain precedents in a particular way, but this issue has not been squarely resolved by the Texas Supreme Court. I would look at this as an entrepreneurial class action, where an argument has been created to try to get into a certification posture. That argument has no foundation whatsoever. Your point is it's so frivolous that we don't need to certify. Is that sort of the idea? No. I think it's that frivolous. Anything else? I think, Your Honor, that on that note, I will give the court some time back. Thank you. All right. We'll now hear the rebuttal. Mr. Lynch, are you going to do that? Maybe if you want to start off responding to Judge Ho's question about certification, what the plaintiff's view is. We also think it's clear. It's certainly not frivolous. To get to your prior question regarding these forms, these are form policies. These are adopted by the insurance service organizations. They're used throughout the country. These are ISO forms. There are no shortage of cases involving actual cash value. Well, speaking of these being form policies, are you familiar with, I think, just two months ago, federal court in Wisconsin, a case involving Progressive, the Thompson case, and really squaring up this exact issue of taxes for cars, and it rejected your position, relying on the fact, in part, that the limitation of liability says the lesser of ACV or replacement. Yes. Same exact words in this case. Yes. The case is still back in court. So what's wrong with it? What's wrong with Thompson? I think it's wrong. It relies on Singleton, and it cites Singleton. First, it distinguishes all the cases from Florida, which we believe are correct, and saying that they involve different policy language and different types of cases. Then it cites Singleton, and it mentions the oil case, which Singleton relies on. So why isn't this just the prototypical case for certification? Both of you have cases you cite from all over the country. Both of you interpret Texas Supreme Court President and other Texas cases in different ways. Both of you, I think, basically acknowledge that no case is binding on us. And you all stipulate that this is a very common issue across the industry. I can't think of a better case for certification. I can't disagree with that, Your Honor. We feel confident in our position. ACV is a very common use term. You're talking about indemnity here in the insurance industry. We're talking about language here. We're talking about the words actual cash value. Why is it different when you apply it to a home than to a vehicle? You're still measuring the out-of-pocket loss from the insured, and that's replacement costs minus depreciation and all reasonable costs, which would be incurred in replacing the property. That is a universal, accepted proposition or interpretation of actual cash value. And you can count on one hand the cases from around the country. I think there may be one from California, which say under an ACV policy, you don't get replacement costs minus depreciation. There are very, very few. They have certainly not cited to any. The Schaefer case is not a total loss case. It deals with whether you can recover diminished value under Part 2 of the standard policy. And there's a whole, my gosh, there's hundreds of cases on whether you can recover diminished value. The majority view is you can't recover diminished value, and the minority view is you can when you're replacing a part or you're repairing a vehicle. That's not what we're dealing with. We're dealing with the total loss of the insured property. Are you familiar with any policies that expressly confront the tax issue and are expressly covered or expressly excluded? No, I'm not. Everybody's pointing to the courts. No. Okay. And again, we think ACV has a generally accepted meaning. And you have to look at the holding in the court below was that the term market value reduced what is recoverable as the actual cash value. Now, this court held in Lowry and it held in the IU versus Chubb case that they're the same. They're synonymous. And in a well-functioning market, as what we're dealing with here, the sale of automobiles, replacement cost minus depreciation is a functional equivalent of market value. That's the law. And the court was interpreting and applying Texas law. So if market value equals actual cash value, how can the judgment of the district court that the language market value reduces actual cash value? It just doesn't make any sense whatsoever. It doesn't reduce actual cash value. An actual cash value has a well-accepted meaning across the insurance industry. And keeping in mind, this is an indemnity policy. This is to make the insured whole. And if you drive off the lot, you have a brand-new vehicle, you drive down the block and you're hit broadside, you can't replace your vehicle under their interpretation. You can't pay the taxes, which are not de minimis. This is significant. You're talking 6% of a $30,000, $40,000 vehicle. The insured would not be made whole. And this is an ACB, indemnity policy, the interpretation from throughout the country. And they're not pointing to a single case which contradicts the interpretation, generally accepted, reasonable. It's a reasonable interpretation. ACB means replacement cost minus depreciation and all reasonable costs which would be incurred in property. That is the accepted definition of ACB. We feel confident in that principle. And we would ask that the court reverse. We think Singleton is an outlier. Notwithstanding that the Wisconsin court, we thought the language of that Thompson opinion, the first half made a lot of sense. And then at the end, it just resorts to Singleton, which we think of Singleton as an outlier. And we would ask that the court reverse for further consistent proceedings. Thank you. All right. The case is submitted. We'll take a 10-minute break before hearing the last two cases.